# In the United States Court of Federal Claims

No. 20-483C
(Originally filed: May 15, 2020)
(Re-issued: May 27, 2020)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| CENTERLINE LOGISTICS CORP., | |
| *Plaintiff*, | |
| v. | Bid protest; Motion to dismiss; Corrective action; Waiver; *Blue & Gold*; Standing; Interested party; Successor in interest. |
| THE UNITED STATES, | |
| *Defendant*, | |
| VANE LINE BUNKERING, INC., | |
| *Intervenor*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Bryant E. Gardner*, Washington, DC, for plaintiff, with whom was *Constantine G. Papvizas*, *Zachary B. Cohen*, and *Samuel M. Zuidema*, of counsel.

*David R. Pehlke*, Trial Attorney, United States Department of Justice, Civil Division, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *Todd P. Federici* and *Adam J. Koudelka*, United States Transportation Command, of counsel.

*Jayna Marie Rust*, Washington, DC, for intervenor. *Scott F. Lane* and

---

[1] Pursuant to the protective order entered in this case, this opinion was filed under seal and held for 7 days to afford the parties an opportunity to propose redactions. The parties agree that no redactions are necessary. The opinion thus appears in full.

1

*Katherine S. Nucci* of counsel.

OPINION

BRUGGINK, *Judge*.

This is a bid protest, in which plaintiff, Centerline Logistics Corp. ("Centerline") seeks, among other relief, to enjoin further action by the United States Transportation Command ("USTC") in pursuit of a solicitation to contract for the transport of bulk fuel by tug and barge. The only other bidder in the solicitation, Vane Line Bunkering, Inc. ("Vane"), has intervened. Pending are defendant's and intervenor's motions to dismiss on jurisdictional grounds and plaintiff's motion for a preliminary injunction.[2] Oral argument on the motions to dismiss was heard on May 13, 2020. Because plaintiff has not shown standing, we grant the motions.

BACKGROUND

Centerline challenges agency action in connection with two related solicitations for the same bunkering services. The contracting effort began in 2017 with the first solicitation, No. HTC711-17-RW001 ("First RFP"). The incumbent at that time was Vane, which has continued to do the work pursuant to bridge contracts ever since. The two bidders for the new contract were Vane and Harley Marine Services, Inc. ("Harley"). Centerline asserts that it is the complete successor in interest to Harley. The contract has been awarded three times in the past three years. The awards were to Harley in 2018, Vane later in 2018, and most recently to Harley again in 2019, but each time the loser filed a protest at the General Accountability Office ("GAO"), resulting in corrective action by the agency. Plaintiff challenges both the corrective action after the first award in 2018, and the corrective action after the award to it in 2019.

On January 31, 2018, Harley was awarded the contract on a lowest-priced, technically acceptable basis after the First RFP, following which Vane filed a protest at GAO, which triggered an evaluation by the agency and a notice of corrective action on March 18, 2018. The agency reopened discussions, issued evaluation notices to Harley, and allowed the offerors to submit revised proposals, including new pricing. USTC was primarily concerned with verifying Harley's ownership of a particular boat that it had

---

[2] The motions were also advanced pursuant to Rule 12 (b)(6), but in view of our granting the motions under Rule 12(b)(1), we need not consider the alternative defense.

offered to use. Plaintiff alleges that discussions were unnecessary for such a query because the agency could have satisfied itself in that regard with only a minor clarification. Thus, revised proposals were unnecessary.

On May 1, 2018, Harley lodged an agency-level protest, challenging the decision to reopen discussions and allow revised pricing. The agency denied the protest two weeks later on the grounds that the passage of time had necessitated opening discussions and allowing the parties to update their prices. Both Vane and Harley submitted revised proposals thereafter. The second award went to Vane on August 30, 2018, because this time its price was significantly lower.

That award was then protested at GAO by Harley. Once again, the agency issued a notice of corrective action, and on April 12, 2019, the Agency issued a second solicitation, No. HTC711-19-RW003 ("Second RFP"). It was substantially similar to the first, although it changed the award rubric to a best value procurement. On August 5, 2019, the Agency awarded the contract to Harley because its lower price represented the best value to the government. Harley's bid was disclosed in its debriefing of Vane. Once again, Vane protested to the GAO. GAO agreed with Vane, in part, and on November 22, 2019, recommended that the Agency reevaluate the proposals. USTC decided once again to reopen discussions and solicit revised proposals with, once again, repricing.

On January 15, 2020, the agency issued evaluation notices and reopened discussions. A deadline of January 29, 2020, was set for responses to the notices. The agency informed Harley that it had downgraded its proposal in two areas. While not formally responding to the notices, Harley sent an email to the contracting officer indicating its disagreement with the process: "Harley Marine / Centerline Logistics does not agree with the governments change pages as submitted or evaluation criteria. We are considering your request and would like the government to provide additional information on the multiple contradictory previous evaluation notices which do not agree with this current evaluation notice." Pl.'s Appx. 281.

The agency treated the email as an agency level bid protest and denied it on February 6, 2020. It simultaneously extended the response time for answers to the evaluation notices to February 10. Two evaluation notices were also added at that time. One concerned the apparent name change by Harley to Centerline. The agency had not received a novation or name change request; so it posed the following written questions to plaintiff:

> - Is Centerline Logistics Corporation a legal entity which is the complete successor in interest to Harley Marine Services, Inc. by virtue of merger, corporate reorganization, the sale of an entire business, or the sale of an entire portion of a business embraced by the proposal?
>
> - IAW FAR 42.1203, did Harley Marine Services, Inc. submit a written request to the responsible contracting officer to recognize Centerline Logistics Corporation as a successor in interest to its contracts or a name change? If not, why not and what is your intention going forward?
>
> - Is privity of contract now intended to be with Centerline Logistics Corporation?
>
> - Do ownership, control, debts, obligations, etc. of Harley Marine Services, Inc. transfer to Centerline Logistics Corporation?
>
> - Is the offer submitted by Harley Marine Services, Inc. now intended to be the offer of Centerline Logistics Corporation?
>
> - Does Harley Marine Services, Inc. still exist and if so, what is the relationship with Centerline Logistics Corporation?
>
> - Does Centerline Logistics Corporation have the same stake in ownership as Harley Marine Services, Inc. for the previously proposed affiliates and subsidiaries? Please provide an organizational chart.
>
> - Does Centerline Logistics Corporation have ownership and control of the required assets necessary to perform on the contract as proposed for Harley Marine Services, Inc.? Please provide documentation IAW the solicitation requirement as stated in the Request for Proposal (RFP), FAR Clause 52.212-1, Volume II - Technical Proposal, para B (a)(i)(f)(a) and (b).

*Id.* at 278-80.

On February 10, 2020, plaintiff, under the name Centerline made the following response through Matt Godden, its CEO:

> I have not received an appropriate response to my prior request.

> Our company has spent years attempting to work with your contracting office to resolve dozens of ENs and require the contracting officer to engage in a discussion prior to submitting further bids and responses. This is very reasonable considering the turnover in your contracting office and the failure by the agency to proactively resolve this dispute. Please respond with a time when you and the contracting officer can make yourself available for further discussion. If no response is forthcoming, we will be forced to escalate our request.

Def.'s Mot. to Dismiss Ex. 1 at 7 (Contracting Officer's Decl.).[3]

On March 10, the agency reissued evaluation notices to plaintiff, changing three of the evaluation points to "deficiencies" and characterizing the current status of plaintiff's proposal as "unacceptable." Harley was also informed that the agency was declining Harley's invitation to open oral discussions and would proceed with written communication only. On March 26, the agency notified both bidders that final proposal and prices were due by 10:00 am CST on March 30. Vane timely resubmitted a bid. The notice to plaintiff included the following warning:

> Pursuant to Federal Acquisition Regulation (FAR) 15.307, Proposal Revisions, you are now provided the opportunity to submit a final revision to your proposal. Following receipt of FPRs, evaluations will continue in accordance with the solicitation evaluation criteria. Accordingly, the Government intends to make an award without obtaining further revisions beyond this FPR. As such, your Business Proposal has been updated to unacceptable; specifically, the Government did not receive a response to deficiency EN HMS-B-0006A. The Government also did not receive a response to EN HMS-B-0005A. Your Technical Proposal remains unacceptable; specifically, the Government did not receive responses to deficiency ENs HMS-T-0017A, HMS-T-0019A, and HMST-0020A. The Government also did not receive a response to technical EN HMST-0018A. Your Past Performance Confidence Assessment Rating remains as Neutral Confidence; specifically, the Government did not receive a response to deficiency EN HMS-PP-0001A. Lastly, regarding

---

[3] Neither party submitted a copy of this letter, but the Contracting Officer quoted as it appears above in her declaration attached to defendant's motion to dismiss.

> your TPP, the Government is unable to determine whether your previously offered prices are still valid as the Government did not receive a response to deficiency EN HMS-P-0001A. Therefore, your TPP has been updated to Unknown as the prices expired as of 9 November 2019 and have not been subsequently renewed. Failure to provide responses, including associated proposal revisions, which address the items identified in the ENs Harley did not respond to, in your Final Proposal Revisions, will remove Harley Marine Services from further award consideration.

Pl.'s Appx. 286-87.

At 10:27 am on March 30, plaintiff made the following response to the contracting officer:

> Thank you for your note – please find the attached letter directed to your office. As stated within the letter and through multiple previous emails, we cannot respond adequately to your requests without further discussions with your office. Please advise on the appropriate time and place for further discussion regarding this contract.

Pl.'s Appx. 290.  The next day the CO declared discussions and final revision dates closed and informed plaintiff of the same. This protest followed on April 21, 2020. The agency has held off making formal award to Vane pending resolution of the motion for preliminary injunction and the motions to dismiss.

DISCUSSION

Centerline's challenge consists of two parts. First, it challenges the agency's decision in 2018 to take corrective action in response to Vane's filing, which included reopening discussions and requesting revised proposals. It particularly questions the decision in view of the fact that the bidders had seen each other's' total price, although as Vane points out, not the internal breakdown of the price calculation. Centerline contends that it was arbitrary and capricious not to limit the corrective action to a request for clarification, an option that arguably would have been open to the agency and would not necessarily have required new proposals.

We need not delay long over this aspect of the complaint. It is well established that a protestor cannot respond to a solicitation, lose the award,

6

and then challenge the agency's decision to issue the solicitation. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). The deadline for a pre-award challenge to agency action, be it to some term of the solicitation or action by the agency in connection with that solicitation, is the close of bidding, or in this circumstance, the date for final proposal revisions. *NVE, Inc. v. United States*, 121 Fed. Cl. 169, 173 (2015) (citing *Blue & Gold*, 492 F.3d at 1313). The time to protest the nature of the corrective action was prior to participating. Submitting a revised proposal amounts to a waiver of any prior grounds for challenge. In short, plaintiff lacks standing, a jurisdictional requisite.

The second challenge is to the agency's decision in response to the GAO's November 22, 2019 recommendation that it reopen the second award to Harley made pursuant to the second RFP. USTC committed itself to reevaluating certain aspects of the proposals and once again decided to solicit revised proposals and new pricing. In this instance, Harley, or as it wants to be known at this time, Centerline, elected not to submit a new proposal before or after the closing date. The government and Vane again seek dismissal of this count on standing grounds.

Plaintiff seeks to ground standing on the fact that Harley was the presumptive awardee emerging from the third award on August 5, 2019. It argues that, as the awardee, it has standing to challenge any agency action that would deprive it of the award it already won. This leaves plaintiff with two insurmountable problems with respect to the remaining claim. First, the nominal plaintiff here is Centerline, not Harley. Yet Harley is the entity which submitted the proposal. Unless Centerline can demonstrate that it is the complete successor in interest to Harley, it has no right to proceed. As we noted in *L-3 Communications Integrated Sys., L.P. v. United States*, 84 Fed. Cl. 768, 778-79 (2008), the inquiry is whether the follow-on entity is "the complete successor-in-interest to the actual offeror." In *L-3*, the court looked to cases and statutes controlling assignments of contract rights and concluded that the same analysis applied: "So too, a bid or proposal may be assigned to an offeror's complete successor-in-interest." *Id.* at 777. The court looked to indicia such as merger, corporate reorganization, the sale of an entire business or the sale of an entire portion of a business embraced by the proposal and was satisfied that the transfer of interests met the test. Here, there is no such proof.

Defendant attaches to its motion a press release from plaintiff dated January 23, 2020, in which the company announces a name change from Harley to "Centerline Logistics Corporation," and reflects that "[t]he company's name change follows an equity ownership change in July 2019."

7

Def.'s Mot. to Dismiss Ex. 3. Intervenor attaches to its motion to dismiss an excerpt from the May, 2020 issue of the Professional Mariner, Journal of the Maritime Industry, in which an article titled, "Newly Christened Centerline Moves Forward in the Post-Harley Era," cites Mr. Godden as explaining that the new name reflects management changes and efforts to resolve "the company's ownership." Intervenor's Mot. to Dismiss Ex. A at 3. The article also raises questions about the transfer of ownership, suggesting that equity ownership has changed, but that it triggered still-pending litigation, and that the name Harley survives on some company assets and the livery of several ships. To its reply brief, intervenor attached copies of records of the corporate existence of Harley from the state of Washington and for Centerline from the state of Delaware. The import being that they are not one and the same entity. At oral argument, plaintiff's counsel did not object to the court's consideration of those materials but demurred as to the continuing existence of Harley in Washington and admitted that Centerline was incorporated in Delaware.[4]

The evidentiary response plaintiff offers is the affidavit of Mr. Godden, who states merely that "Harley changed its name to Centerline in January 2020 as part of a rebranding effort. Centerline Logistics Corp. is a complete continuation of Harley Marine Services, Inc." Pl's Response to Mot. to Dismiss Ex. A at ¶ 4 (Supp. Decl. of Matthew Gooden). Nothing further is offered by way of explanation. For instance, no answer was given to the question asked by the agency, "Does Harley Marine Services, Inc. still exist and if so, what is the relationship with Centerline Logistics Corporation?" Nor did Mr. Godden represent that Centerline inherited sufficient assets of Harley to perform. Nor did he answer the agency's question concerning whether any effort had been made to substitute contracting entities pursuant to FAR part 42.1203. At oral argument, counsel offered that the declaration of Mr. Gooden was all that was necessary because Centerline and Harley are the same juridical person, i.e., the same legal entity.

More is needed to confirm standing. While the parties do not point to any regulation directing controlling substitution of one bidder for another, we have no difficulty with the agency's reliance on FAR part 42.1203, which controls substituting one existing contracting party for another. Harley and Centerline are different corporate entities, and while successor corporations can assume the rights and obligations of a related former entity, the precise terms of that handoff are of legitimate concern to the agency. There is insufficient proof that Centerline is the complete legal successor in interest

---

[4] The transcript of that proceeding is not yet available for citation.

to Harley, and yet there are telling indications to the contrary. We disagree with counsel's offering that the interested party did not change, only its name. As plaintiff admits, Harley was wound up as a Washington state corporation and no longer exists, and a new corporation was formed under the law of Delaware by the name of Centerline. They are patently not the same legal entity. Further, defendant and intervenor have offered evidence that the equity interests have changed. For one, the bidder's namesake, Mr. Harley, is no longer associated. The article offered by Vane details at least one additional major change. In sum, without having satisfied the agency at the time, or even having attempted to, and in the face of several indications to the contrary, the plaintiff here has not established that it is one and the same as the bidding entity.

Even if Centerline were the complete successor in interest to Harley, there is a second standing problem. The Federal Circuit has construed the term "interested party" in the ADRA to have the same meaning that it has under the Competition and Contracting Act, 31 U.S.C. § 3551–56 ("CICA"). *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). CICA defines an "interested party" to mean "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A). Harley did not submit a revised proposal as requested by the agency and its previous bid was found to be unacceptable after it did not respond to the notices of deficiency.

To challenge a solicitation, one must either have submitted a proposal, or intend to submit one but protest prior to the closing date. Centerline did neither. The decision in *MCI Telecommunication Corp. v. United States*, is instructive:

> . . . [O]ne who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation. After the date for submission of proposals has passed, however, the would-be protestor can no longer realistically expect to submit a bid on the proposed contract, and, therefore, cannot achieve prospective bidderhood with regard to the original solicitation. This is equally true whether the would-be protestor missed the deadline because it negligently failed to file a proposal, or, as here, because it deliberately chose to be only a subcontractor and not to submit its own proposal.

*MCI Telecomm. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir.1989).

Although Centerline is in a slightly different posture than MCI was—here we are dealing with corrective action and proposal revisions rather than the original deadline for submittals—we believe the same logic applies.

Not only was the original bidder a different entity, but Centerline has the additional problem referred to in MCI. Neither Harley nor Centerline preserved its rights to challenge the solicitation by protesting prior to the closing date for final proposal revisions.

As outlined above, the agency gave Centerline several opportunities to submit a new proposal to the third corrective action. The deadline of 10:00 am on March 30 could not have been clearer. Instead of submitting a final proposal, plaintiff once again asked for oral discussions. As in *MCI*, plaintiff deliberately chose not to submit a proposal. Plaintiff's assertion that this amounts to a "catch 22" is off the mark. Plaintiff was not obligated to bid. It had the option to protest before the closing date. As in *Rex Service Corp.*, it is not relevant to the protestor's status that it filed a pre-award agency protest. 448 F.3d at 1308. The agency exercised its discretion under FAR 15.306(d)(3) to resolicit new proposals and engage in written discussion only. *See id.* ("The scope and extent of discussions are a matter of contracting officer judgment."). Having done so, a challenge to that decision, which is the heart of plaintiff's complaint here, must come prior to the closing of final bidding. It did not. Plaintiff thus lacks standing.

Accordingly, the following is ordered:

1. Plaintiff's motion for a preliminary injunction (ECF No. 4) is denied.

2.  Defendant's and intervenor's motions to dismiss (ECF Nos. 23 & 25) are granted.

3. The Clerk of Court is directed to dismiss the complaint and enter judgment accordingly.

No costs.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge